**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **MICHAEL GARCIA, ID # 12054090,** ) | |
| Plaintiff, ) | |
| vs. ) | No. 3:13-CV-1261-B-BH |
| ) | |
| **DALLAS POLICE DEPARTMENT, et al.,** ) | |
| Defendants. ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for screening. Based on the relevant filings and applicable law, all of the plaintiff's claims against the Dallas Police Department (DPD), the Dallas County Jail (Jail), Jail medical staff (Jail Medical Staff), Jail detention officers (Jail Detention Officers), the City of Dallas (City), Dallas District Attorney Craig Watkins (DA), unnamed Assistant District Attorneys (ADAs), State Judge Howard (Judge), Parole Officers Lasada Birdwell and Wanda Salingas (Parole Officers), Attorneys Daniel L. Barnes and Winston Shepard (Attorneys), and Sheriff Lupe Valdez (Sheriff), and his claim of racial profiling against DPD officers Ricardo de Jesus Solis, Daniel Razo, NFN Martinez, an unnamed officer, and Sergeant Fuxan (Officers) should be dismissed as frivolous. His false arrest, illegal search and seizure, and excessive force claims against the Officers should be **STAYED** pending a motion to reopen filed after the conclusion of the criminal charges against the plaintiff.

**I. BACKGROUND**

Michael Garcia (Plaintiff), a pretrial detainee at the Jail, sues numerous defendants under 42 U.S.C. § 1983. He asserts that the Parole Officers violated his rights because he was arrested for a parole violation on April 24, 2012, after his release from the hospital after receiving care for injuries sustained in a car accident. He also asserts claims against the Sheriff and Jail employees regarding the medical care he received after this arrest and his subsequent transfer to the state prison

system. (Magistrate Judge's Questionnaire "MJQ" at 17-21).[1]  Plaintiff asserts claims against the City and the Officers who subsequently arrested him on August 10, 2012, alleging excessive force, illegal search, racial profiling, and filing of false police reports.  He sues his defense Attorneys, the DA and unnamed ADAs, and the Judge in connection his pending criminal charges, and he asserts that he has been denied adequate medical care since his re-incarceration in the Jail.  (Compl. at 3-4; MJQ Ans. 1, 3, 6, 7; pp. 23-28).  As of the date of his MJQ answers (April 18, 2013), Plaintiff had been indicted for aggravated assault on a public servant in Cause No. F12-58975, and resisting arrest in Cause No. M1261080M, but had not yet gone to trial.  (MJQ Ans. 3; *see also* www.dallascounty.org, search Plaintiff's criminal record).  He seeks monetary compensation and the dismissal of his pending criminal charges. (MJQ, Ans 1, 2, 8).  No process has been issued in this case.

## II.  PRELIMINARY SCREENING

Plaintiff is an inmate at the Jail who has been permitted to proceed *in forma pauperis*.  As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam).  Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke*

---

[1] Plaintiff's claims against specific prison officials were transferred to the Amarillo Division, where the prison officials and unit is located. (*See* doc. 12).

2

*v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim that falls under the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994), "is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996). A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

### III. SECTION 1983

Plaintiff sues the defendants under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A. <u>Habeas Claims</u>**

Plaintiff seeks the dismissal of his pending criminal cases. (Compl. at 4; MJQ Ans. 2). Habeas relief is an inappropriate remedy in a § 1983 action, however. *See Wolff v. McDonnell*, 418

3

U.S. 539, 554 (1974). A prisoner cannot challenge the fact or duration of confinement. *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973)). He may only do so within the exclusive scope of habeas corpus. *See Preiser*, 411 U.S. at 487. Plaintiff may only obtain declaratory or monetary relief in this § 1983 action, so he fails to state a claim upon which relief may be granted on his request for dismissal of his pending criminal cases.

**B. Claims against Non-Jural Entities**

Plaintiff sues the DPD and the Dallas County Jail. (Comp. at 1; MJQ Ans. 1). A plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313. A city police department and a county jail are not jural entities subject to suit. *See*, *e.g.*, *Williams v. City of Dallas Police Dep't*, No. 3:09-CV-0275-P, 2009 WL 812239, at *2 (N.D. Tex. Mar. 26, 2009) (accepting recommendation of Mag. J.); *Edwards v. Dallas County Jail Med. Dep't*, No. 3:07-CV-0886-G, 2007 WL 2687615, at *2 (N.D. Tex. Sept. 13, 2007).[2] The claims against DPD and the Jail should therefore be dismissed.

**C. Claims against Immune Defendants**

Plaintiff sues the Judge for allegedly committing perjury during the course of his criminal case, for not permitting him to have an examining trial after new counsel was appointed for him, and for not imposing sanctions on his first attorney. (Compl. at 4; MJQ Ans. at p. 26). He also sues the

---

[2] The MJQ specifically advised Plaintiff that the DPD is a non-jural entity and provided him an opportunity to amend his complaint to add additional defendants. He named additional police officers as defendants. (MJQ Ans. 2).

4

DA and ADAs assigned to the criminal court to which his case is assigned for indicting him on the pending criminal charges. (MJQ Ans. 2). Plaintiff sues the Parole Officer who issued a warrant for his arrest for failing to report (Birdwell) and the hearing officer at his parole hearing (Salingas), after which his parole was revoked.

### 1. *Official Capacity Claims*

To the extent that Plaintiff is suing the Judge, the DA, the ADAs, and the Parole Officers in their official capacities, an official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Hafer v. Melo*, 502 U.S. 21, 26–27 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Texas state judges are agents of the State of Texas, and therefore have Eleventh Amendment immunity for claims for monetary damages asserted against them in their official capacities. *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008); *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). Likewise, Texas district attorneys, assistant district attorneys, and parole officers are also considered agents of the state, immune from claims for damages under the Eleventh Amendment, when acting in their official, prosecutorial capacities. *Neinast v. Texas*, 217 F.3d 275, 280 (5th Cir. 2000); *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir.1997); *Quinn v. Roach*, 326 Fed. App'x 280, 292-293 (5th Cir. May 4, 2009).

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[3] "The Eleventh

---

[3] Although courts and litigants often use "Eleventh Amendment immunity" as a "convenient shorthand", the phrase is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *N. Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189, 193 (2006) (quoting *Alden v. Maine*, 527 U.S. 706, 713 (1999)).

Amendment acts as a jurisdictional bar to a suit in federal court against a state or one of its agencies. This immunity applies unless it is waived by consent of a state or abrogated by Congress. " *See Curry v. Ellis Cnty., Tex.*, 2009 WL 2002915, at *3 (N.D. Tex. July 10, 2009) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984)). Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Communic'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit nor has Congress abrogated the immunity by enacting 42 U.S.C. § 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Any official capacity claims against the Judge, the DA, the ADAs, and the Parole Officers are all based on actions taken in their official capacities as agents of the State of Texas. Accordingly, his § 1983 official capacity claims against them should be dismissed as frivolous because the State of Texas is immune from suit.

### *2. Individual Capacity Claims*

#### a. Judge

To the extent that Plaintiff is suing the Judge in her individual capacity, the Supreme Court has recognized absolute immunity for judges acting in the performance of their judicial duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 745–46 (1982). Judges are immune from suit for damages resulting from any judicial act unless performed in "the clear absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Allegations of bad faith or malice do not overcome judicial immunity. *Mireles*, 502 U.S. at 11. In determining whether a judge acts outside of her judicial capacity, courts should consider whether: (1) the precise act complained of is a normal judicial function; (2) the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's

6

chambers; (3) the controversy centered around a case pending before the court; and (4) the acts rose out of a visit to the judge in her official capacity. *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). If these factors are answered in the affirmative, it favors immunity. *Id.*

Here, Plaintiff does not assert that the Judge lacked jurisdiction over his pending criminal case. He complains of alleged unspecified perjury and her actions in her courtroom. These actions were taken in her role as the judge in Plaintiff's criminal case. The Judge is absolutely immune from all federal claims asserted against her individually, and they should be dismissed. *See Nixon*, 457 U.S. at 745–46.

### b. DA and ADAs

Plaintiff's claims against the DA and the ADAs in their individual capacities are also without merit. Prosecutors enjoy absolute immunity to initiate and pursue criminal prosecutions. *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). While the Supreme Court has recognized that a prosecutor has only qualified immunity with respect to his or her administrative and investigative duties, *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993), Plaintiff in this case has made no allegation that the DA or the ADAs acted other than in an adjudicative role as prosecutors. He sues them only because they indicted him on the pending criminal charges. These actions are taken by a prosecutor in his/her role as an advocate for the State. *Id.* at 273. Furthermore, a prosecutor is entitled to absolute immunity for acts taken to initiate prosecution, even against allegations that he acted "maliciously, wantonly, or negligently." *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987), *citing Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985).

Because all of the acts of which Plaintiff complains were taken during the course and scope of the duties of a prosecutor, the DA and ADAs are entitled to immunity. *See Imbler*, 424 U.S. at 423. Plaintiff's § 1983 claims against them in their individual capacities should be dismissed.

7

### c. Parole Officers

"Parole officers are entitled to absolute immunity from liability for their conduct in parole decisions and in the exercise of their decision-making powers." *Littles v. Bd. of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995) (per curiam). They also enjoy absolute immunity for actions taken when personally participating in the revocation hearing. *McGrew v. Tex. Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995) (per curiam); *see also Woods v. Chapman*, 239 Fed. App'x 35, 37 (5th Cir. 2007) (per curiam) (parole officials were absolutely immune from suit for damages arising from proceedings to revoke or change conditions of parole). Because the Parole Officer are immune from suit, Plaintiff has failed to state a claim against them upon which relief may be granted, and his § 1983 claims against them individually should be dismissed.

## D. Claims against Non-State Actors

Plaintiff sues his court-appointed defense Attorneys based on their representation of him in his pending criminal case. (MJQ Ans. 2).

It is well-established that a court-appointed attorney does not act under color of state law in representing a defendant at trial or on direct appeal. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (holding that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding); *Mills v. Crim. Dist. Ct. No. 3*, 837 F.2d 677, 679 (5th Cir. 1988) (holding that "private attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983"). Although a private party may be acting "under color of state law" and be held liable under § 1983 in certain circumstances, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989).

Here, Plaintiff has made no allegation that his Attorneys were state actors; he only complains

about their representation of him in his pending case. He has therefore failed to state a viable claim under § 1983 against them.

### E. Claims against Municipalities

Plaintiff sues the City, as well as the Sheriff, Jail Medical Staff, Jail Detention Officers, and DPD Officers in their official capacities. A suit against these individuals in their official capacities is merely another way of pleading an action against their municipal employers, the City and Dallas County. *Kentucky v. Graham*, 473 U.S. at 165. Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica County*, 543 F.3d 221, 224 (5th Cir. 2008). However, § 1983 does not allow a municipality to be held vicariously liable for its officers' actions on a theory of respondeat superior. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978).[4] To hold a municipality liable under § 1983, plaintiffs must show an "underlying claim of a violation of rights," as well as "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). The official policy requirement means that municipal liability under § 1983 is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479-80 (1986).

Plaintiff contends that the Officers used excessive force against him, illegally searched him, engaged in racial profiling, and filed false reports. (MJQ Ans. 2, 4, 6). He asserts that his civil rights were violated when he was transferred from the Jail to the state prison system with physical injuries that had not sufficiently healed to withstand travel, and because of the medical care he has received

---

[4] Municipal liability analysis also applies to Texas counties. *See Prince v. Curry*, No. 10-10294, 2011 WL 1659493, at * 3 n. 3 (5th Cir. Apr. 28, 2011); *Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998).

in the jail. (MJQ at p. 17-18, 25). Plaintiff does not allege that a specific policy was officially adopted and promulgated by the City's or County's lawmaking officers, or by an official who had been delegated law-making authority. He also fails to allege a constitutional violation for which the moving force was the policy. Finally, he has failed to allege any persistent and widespread practice that caused his injuries *See Monell*, 436 U.S. at 691–95. The totality of his allegations against the City is his statement to "look at the news every other day the Dallas Police Department is in trouble." (MJQ Ans. 7). Plaintiff has failed to state a viable § 1983 claim against the City or the County, and his official capacity claims against the Sheriff, the Officers, Medical Staff and the Detention Officers should also be dismissed.

## F. Claims against Supervisor

Plaintiff sues the Sheriff in her individual capacity based on the medical care he received in the Jail after his initial arrest in March of 2012, his transfer to prison allegedly before he was medically capable of being transferred, and his medical care after his re-incarceration. (MJQ Ans. 1). He does not allege that she was personally involved in either his medical care or his transfer.

Supervisory officials cannot be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or respondeat superior liability. *See Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005). In order to prevail against a supervisor under § 1983, a plaintiff must show that: 1) the supervisor's conduct directly caused a constitutional violation; or 2) that the supervisor was "deliberately indifferent" to a violation of a constitutional right. *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000). The acts of a subordinate "trigger no individual § 1983 liability." *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). There must be some showing of personal involvement by a particular individual defendant to prevail against such individual. *Id.* A plaintiff

cannot make generalized allegations. *Howard v. Fortenberry,* 723 F.2d 1206 (5th Cir.1984). Because Plaintiff has not alleged that the Sheriff was personally involved in any alleged violation of his civil rights, his individual capacity claims against her should therefore be dismissed.

### G. Medical Care Claims

Plaintiff sues unnamed Jail Detention Officers and Medical Staff based on his medical care after his first and second arrests, and on the decision to transfer him to prison after his first arrest in April of 2012.

With regard to Plaintiff's claim that these unnamed individuals violated his civil rights by transferring him to prison before he was physically able, he has not alleged that they were personally involved in the decision to transfer him to prison. Without an allegation of personal involvement, this claim against these individuals fails. *See Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d at 314.

As for Plaintiff's medical care claims, the Eighth Amendment requires prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).[5] Prison officials violate this requirement only when (1) the deprivation is "objectively, 'sufficiently serious'" in that the alleged act or omission results "in the denial of 'the minimal civilized measure of life's necessities'" and (2) the official had "a 'sufficiently culpable state of mind.'" *Id.* at 834 (citations omitted). The objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have

---

[5] A pretrial detainee's constitutional rights related to conditions of confinement "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment" rather than from the prohibition against cruel and unusual punishment contained within the Eighth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). However, since basic human needs such as medical care are the same for pretrial detainees and convicted inmates, the same standards apply under both amendments. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

11

unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To satisfy the second component, the officials must be deliberately indifferent "to a substantial risk of serious harm to an inmate." *Farmer*, 511 U.S. at 828. This state of mind requires more than negligence but less than intent to cause harm or knowledge that harm will result from the acts or omissions. *Id.* at 835. An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. This "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations and internal quotation marks omitted). An inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Similar conduct includes intentionally "delaying access to medical care" and "interfering with treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). In contrast, a failure to provide additional treatment may show medical malpractice but not deliberate indifference; decisions to provide additional treatment are matters of medical judgment. *Id.* at 107. Neither an incorrect diagnosis nor a plaintiff's disagreement with medical treatment suffice to state a claim. *Domino*, 239 F.3d at 756*; Gobert*, 463 F.3d at 346; *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001)*; Estelle*, 429 U.S. at 107-08.

Plaintiff claims that when he was arrested on April 24, 2012, he was placed on a medical floor at the Jail, he was seen by Medical Staff twice a day for wound care, he was treated for his other injuries, and he wore a leg splint pending future surgeries because of injuries he sustained in

a car accident. (MJQ at p. 17-18). He also claims that after his arrest on August 10, 2012, he was again placed in the "medical tank" at the Jail, he again received wound care, but that he no longer had his leg splint because it had been removed by prison officials, so his ankle healed incorrectly. *Id*. at 25-26.

Plaintiff has not alleged that Detention Officers and Medical Staff were deliberately indifferent to his medical needs. He has not alleged that they refused to treat him, ignored his complaints, or intentionally treated him incorrectly. While he complains that one injury healed incorrectly because his leg splint was removed, he acknowledges that this was not done by Jail Medical Staff. To the extent that Plaintiff disagrees with the medical treatment he has received, this is insufficient to state a viable claim. His claims against the unnamed Detention Officers and Medical Staff in their individual capacities should be dismissed.

## H.  Racial Profiling Claims

Plaintiff asserts that Officers Martinez, Razo, Solis, and an unnamed fourth officer racially profiled him during his arrest on August 10, 2012. (Compl. at 3, MJQ Ans. 6).

A claim of racial profiling is a claim that one's equal protection rights have been violated. *Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that claims asserting that selective enforcement of a law based on race are properly brought under the Equal Protection clause and that that clause may be violated even if police action is acceptable under the Fourth Amendment). To allege an equal protection claim, Plaintiff must allege that he received treatment different from that received by other similarly situated individuals *and* that the unequal treatment stemmed from a discriminatory or purposeful intent. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985); *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).

Plaintiff has made only the conclusory allegation that he was racially profiled "because of

13

my tattoes [sic] that I have on my 2 arms and because of the neighborhood that I was in and because of what I was saying." (MJQ Ans. 6). He has failed to allege any facts to support his conclusory claim that there have been similarly situated individuals of other races who have been treated differently when stopped, searched, and arrested by police officers. He has also failed to allege any facts to support his conclusory allegation that any alleged unequal treatment was because of a discriminatory intent. He has therefore failed to assert a cognizable equal protection claim. *Kock v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *see also McNight v. Eason*, 227 Fed. App'x 356, *1 (5th Cir. May 4, 2007) (holding that conclusory allegations of racial discrimination cannot support a viable equal protection claim). This claim against these Officers should therefore be dismissed.

## I. Remaining Claims

Plaintiff also sues Officers Razo and Solis for allegedly using excessive force during his August 2012 arrest. He sues Officers Razo, Solis, and Sergeant Fuxan for committing perjury on police reports that led to his indictment, and he sues Officer Martinez and an unnamed African-American officer for illegally searching him during this arrest. (Compl. at 4, MJQ Ans. 2).

In *Heck v. Humphrey*, the Supreme Court held that when a successful civil rights action would necessarily imply the invalidity of a plaintiff's conviction or sentence, the claim must be dismissed unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Id*. at 486-87. A plaintiff does so by achieving "favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam). "[T]he *Heck* determination depends on the nature of the offense and of the claim." *Arnold v. Slaughter*, 100 Fed. App'x. 321, 323 (5th

Cir. June 14, 2004).

The Supreme Court has held that *Heck* does not extend to cases where a plaintiff files a civil rights action challenging his arrest before any conviction, such as this case. *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *see also DeLeon v. Corpus Christi*, 488 F.3d 649, 655 (5th Cir. 2007) (noting that the Supreme Court in *Wallace* refused to extend *Heck*'s application to pending criminal matters). In *Wallace*, the Supreme Court stated that:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.

*Id*. at 393-94. Here, Plaintiff has made in essence a false arrest claim that is related to his anticipated criminal trial. A claim of false arrest would necessarily imply the invalidity of a conviction. *See Hudson v. Hughes*, 98 F.3d 868, 872-73 (5th Cir.1996). Plaintiff also alleges that the Officers committed perjury on police reports that led to his indictment, that he was illegally searched, and that the results of this search are not admissible at trial. These issues will be determined in the criminal case. The appropriate action is therefore to stay Plaintiff's claims against the Officers regarding alleged false police reports and an alleged illegal search pending the resolution of the criminal charges against him. *See Banks v. Gammon*, 2008 WL 2404967, slip op. at *3 (N.D. Tex. June 29, 2008 (staying a claim of false imprisonment made by a pretrial detainee).

Likewise, Plaintiff has alleged that police officers used excessive force against him. He is currently charged with assault of a public servant. Under Texas state law, a person is guilty of assault on a public servant, a third degree felony, if he: 1) intentionally, knowingly, or recklessly caused bodily injury to a person; 2) the person injured was a public servant; 3) the defendant knew

15

his victim was a public servant; and 4) the victim was lawfully discharging his official duties at the time of the assault or was assaulted in retaliation for exercising his official power. *See* TEX. PENAL CODE ANN. § 22.01(a), (b)(1) (West 2009).  Plaintiff's excessive force claims are related to his pending criminal case because success on this claim might call into question a conviction for assault on a public servant by invalidating an element of the crime, i.e., that the public servant was lawfully discharging his duties. *Hall v. State*, 158 S.W.3d 470, 474 (Tex. Crim. App. 2005) (holding that a correctional officer who violates the civil rights of a prisoner within his charge is not acting in the "lawful discharge" of those duties, because the term "lawful discharge" means that the public servant is not "criminally or tortiously abusing his office as a public servant.").  Therefore, Plaintiff's excessive force claims should also be stayed pending the resolution of his criminal cases. *See Profit v. Ouachita Parish*, 411 Fed. Appx. 708, 709 (5th Cir. Feb. 11, 2011) (noting with approval that the district court had stayed a civil case attacking the legality of a detainee's arrest, prosecution, and detention pending the resolution of the criminal charges).

## IV.  RECOMMENDATION

The Court should **DISMISS WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) all of Plaintiff's claims except his false arrest, illegal search, and excessive forces claims against the DPD Officers, and these claims should be **STAYED**. The Clerk of the Court should be **DIRECTED** to mark this action **CLOSED** for statistical purposes.  The Court should retain jurisdiction and order that the case may be reopened on motion of Plaintiff after the pending state criminal charges are resolved.  The motion should be ordered filed within the statutory period of limitations for Plaintiff's claims, or within sixty days of the date the criminal charges are resolved, whichever date is later.

**SIGNED this 1st day of July, 2013.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE